**Mary KICKLIGHTER, Plaintiff-Appellant,**

v.

**NAILS BY JANNEE, INC., Defendant-Appellee.**

**Mary KICKLIGHTER, Plaintiff,**

v.

**NAILS BY JANNEE, INC., Defendant and Third-Party Plaintiff-Appellee,**

v.

**KAY–SEE DENTAL MANUFACTURING CO., Third-Party Defendant-Appellant.**

Nos. 77–3226, 78–1145.

United States Court of Appeals, Fifth Circuit.

April 30, 1980.

Rehearing Denied July 3, 1980.

Ronald F. Adams, Brunswick, Ga., for Kicklighter in No. 77–3226.

John W. Davis, Brunswick, Ga., for Kicklighter in both cases.

Perry Brannen, Jr., Savannah, Ga., for Rohm & Haas Co.

Edward T. Brennan, Savannah, Ga., for E. I. duPont de Nemours & Co.

J. Thomas Whelchel, Brunswick, Ga., for third-party defendant-appellant.

Bennet, Gilbert, Gilbert, Whittle, Harrell & Gayner, Wallace E. Harrell, Brunswick, Ga., for Nails by Jannee, Inc.

Before AINSWORTH, VANCE and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

In this diversity case, Appellant Mary Kicklighter sued Nails by Jannee, Inc. for compensatory and punitive damages for injuries suffered as a result of her use of a product supplied to her by defendant, Nails by Jannee, Inc. The product is a fingernail restoration kit containing a bottle of powder and a bottle of liquid which are combined and brushed onto the natural fingernail to build up an artificial nail. The powder component is the chemical, methyl methacrylate, and the liquid component is another form of the same chemical. In combination, these components form a polymer, a hard substance which creates the artificial nail.

Plaintiff Kicklighter alleged that after she used the product for four to six weeks, she experienced coughing, bronchial spasm and headaches. She sought medical attention and was later hospitalized and found to require treatment for diabetes. In addition to these symptoms, Kicklighter complained of continued difficulty breathing and a general deterioration of her health, among other things. She attributes these injuries to the fumes and strong odor of methyl methacrylate. Kicklighter's complaint is predicated on theories of negligence, strict liability and breach of warranty.

In a third-party complaint, Nails by Jannee, Inc. sued Kay-See Dental Manufacturing Company, which supplied the bulk form of the product to Nails by Jannee, for indemnification. The third-party plaintiff's case is grounded in negligence and the theories of breach of express and implied warranty.

The main case (plaintiff versus defendant) and the third-party action (defendant versus third-party defendant) were tried together. The jury found Nails by Jannee, Inc. liable to plaintiff Kicklighter for $25,000 compensatory damages and $60,000 punitive damages and found further that Kay-See was liable over to Nails by Jannee, Inc. on the compensatory damage claim of $25,000. The motion by Nails by Jannee, Inc. for a judgment notwithstanding the verdict with respect to the award of punitive damages was granted by the district court. The trial court denied Kay-See's motion for judgment notwithstanding the verdict or in the alternative for a new trial. Kicklighter now appeals from the judgment notwithstanding the verdict for Nails by Jannee, Inc. on the issue of punitive damages, and Kay-See appeals from the denial of its motion for judgment notwithstanding the verdict or for new trial. Nails by Jannee does not appeal the finding that it was liable to Mary Kicklighter for compensatory damages. We treat these appeals *seriatim.*

### KICKLIGHTER'S APPEAL

The only issue raised by Mary Kicklighter on appeal is whether the district court erred when it granted the motion by defendant Nails by Jannee, Inc. for judgment notwithstanding the verdict under Rule 50, Fed.R. Civ.P. on the punitive damages aspect of the verdict.

■ Under Georgia law, the substantive law applicable in this diversity case, imposition of punitive damages is authorized only when there is "evidence of wilful misconduct, malice, fraud, wantonness, or oppression, or that entire want of care

which would raise the presumption of a conscious indifference to consequences. The latter expression relates to an intentional disregard of the rights of another, knowingly or wilfully disregarding such rights." *Gilman Paper Co. v. James*, 235 Ga. 348, 219 S.E.2d 447 (1975). Punitive damages cannot be awarded for mere negligence. *Molton, et al. v. Commercial Credit Corp.*, 127 Ga.App. 390, 193 S.E.2d 629 (1972); *Louisville and Nashville Railroad Co. v. Young*, 112 Ga.App. 608, 145 S.E.2d 700 (1965).

Determination of whether punitive damages are authorized is a jury question. *Walk v. Carter*, 110 Ga.App. 273, 138 S.E.2d 390 (1964). However, in this circuit, in diversity cases, federal courts apply a federal rather than a state test for the sufficiency of the evidence to create a jury question. *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (en banc) at 368. Under *Boeing*, in order to create a jury question, there must be a conflict in substantial evidence. The trial judge should grant a motion for judgment notwithstanding the verdict only when he believes that reasonable men could not arrive at a contrary verdict.

The district court concluded in this case, "that the only reasonable conclusion that the jury could have reached was that

the defendant [Nails by Jannee, Inc.] did not act recklessly or with that entire want of care which would raise the presumption of a conscious indifference to the consequences of its actions." The court noted further that there was no contention that Nails by Jannee acted intentionally or willfully in causing Kicklighter's injuries. There was no evidence from which the jury could have inferred that Nails by Jannee knew or suspected that the product sold to Kicklighter was potentially dangerous, the district court found.

We hold that the district court correctly applied the *Boeing v. Shipman* standard of review in ruling on the motion. Our review of the record below convinces us that the district court did not err when it found that the only reasonable conclusion the jury could have reached was that the defendant did not act "with that entire want of care which would raise the presumption of a conscious indifference to the consequences of its actions." The district court's grant of the motion for judgment notwithstanding the verdict with respect to punitive damages is, therefore, affirmed.

## KAY–SEE'S APPEAL

Third-party defendant Kay-See has alleged nine points of error in its appeal.[1] Three of the errors alleged relate to

---

1. Third-party plaintiff-appellee, Nails by Jannee, Inc., raises two additional issues in this portion of the appeal. We can dispose of them briefly. Nails argues, first, that third-party defendant Kay-See Dental Manufacturing Co. is not entitled to obtain a new trial in the third-party action by urging error in the main case, *i. e.*, plaintiff v. defendant-third-party plaintiff. Nails contends that the third-party defendant is bound by the adjudication of the third-party plaintiff's liability to plaintiff because Nails did not appeal the judgment against it. The contention is without merit, however. Rule 14, Fed.R.Civ.P., provides that a "third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim." From this provision, we think it logically follows that the third-party defendant may assert on appeal errors in the main case. *See* 6 C. Wright and A. Miller *Federal Practice and Procedure* § 1463 n. 61 (1971), which cites *Tejas Development Co. v. McGough Bros.*, 167 F.2d 268 (5th Cir. 1948) and states, at p. 334:

The third-party defendant should be able to appeal from a judgment on the original claim against the third-party plaintiff even if he has not presented a defense to the original claim since if no liability were established between the original plaintiff and the defendant then the claim for secondary liability no longer would exist.

Lawyers for Kay-See participated actively in the trial of the main case through examination and cross-examination of witnesses, requests to charge in connection with plaintiff's case against defendant and exceptions to jury charges. Accordingly, we hold that third-party defendant can assert on appeal errors in the main case.

The other contention of Nails by Jannee, Inc. is that Kay-See should not be permitted to appeal because it did not properly designate the judgment appealed from. Instead of appealing from the judgment against Nails by Jannee, Inc., or the judgment against Kay-See Dental Manufacturing Co., Kay-See appealed from the denial of its motion for judgment

the third-party action, Nails by Jannee, Inc. versus Kay-See Dental Manufacturing Co. The remaining six relate to the main action, *i. e.* plaintiff Kicklighter versus defendant Nails by Jannee, Inc.

■ We have reviewed each of the three allegations of error in the third-party action concerning Kay-See's liability over to Nails by Jannee, Inc. Because we find no merit in these assertions of error, we affirm so much of the judgment of the district court which holds Kay-See Dental Manufacturing Co. liable over to Nails by Jannee, Inc. for any liability Nails is found to have to plaintiff Kicklighter.

Upon review of the six errors alleged in the main case, we conclude that the only contention which merits detailed analysis is that the trial court erred in giving the *res ipsa loquitur* charge. We find that the trial court did commit error in giving that charge and accordingly reverse the judgment of liability for compensatory damages in favor of plaintiff Kicklighter and remand for a new trial.

■ Under Georgia law, the applicable substantive law in this diversity case, *res ipsa loquitur* is a rule of evidence which allows the jury to infer, from circumstantial evidence, negligence on the part of the defendant. *Parker v. Daily*, 226 Ga. 643, 645, 177 S.E.2d 44 (1970); *Macon Coca-Cola Co.*

*v. Chancey*, 101 Ga.App. 166, 168–169, 112 S.E.2d 811, *aff'd*, 216 Ga. 61, 114 S.E.2d 517 (1960). The substantive law of Georgia determines which elements are required for the application of the doctrine of *res ipsa loquitur* in this case. *Lairsey v. Advance Abrasives Co.*, 528 F.2d 991 (5th Cir. 1976); *Simmons v. City Stores Company*, 412 F.2d 897 (5th Cir. 1969); *Louisiana & Arkansas Railway Co. v. Fireman's Fund Insurance Co.*, 380 F.2d 541 (5th Cir. 1967). Under Georgia law, the doctrine of *res ipsa loquitur* applies when the following elements are present: (1) the injury must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) the injury must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) the injury must not have been due to any voluntary action or contribution on the part of the plaintiff. *Richmond Hospital Authority v. Hines*, 121 Ga. App. 537, 174 S.E.2d 364 (1970); *Macon Coca-Cola Co. v. Chancey, supra.* An additional requirement for the applicability of the doctrine under Georgia law is the absence of an intervening cause which could produce the alleged injury. *Floyd v. Swift & Co.*, 59 Ga.App. 154, 200 S.E. 531 (1938).

Third-party defendant-appellant Kay-See asserts that the district court's *res ipsa loquitur* charge[2] was erroneously given be-

---

notwithstanding the verdict or in the alternative for a new trial. Thus, Nails by Jannee, Inc. argues, Kay-See has failed to meet the requirements of F.R.A.P. 3(c) concerning the required contents of a notice of appeal, and its appeal should be dismissed.

The Supreme Court rejected a similar argument in *State Farm Mutual Auto Insurance Co. v. Palmer*, 350 U.S. 944, 76 S.Ct. 321, 100 L.Ed. 823 (1956). There, in a per curiam opinion, it reversed the decision of the 9th Circuit at 255 F.2d 876 (1955) which had dismissed the appeal because appellant, in its notice of appeal, had designated the trial court's denial of its motion for new trial and to amend findings, rather than the judgment against it.

In a later case, the Supreme Court reversed the dismissal of an appeal by the First Circuit Court of Appeals where appellant had not specified in his notice of appeal that the appeal was from a judgment dismissing the complaint as well as from the order denying certain motions. *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The Court stated, "It is too

late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities." *Id.* at 181, 83 S.Ct. at 230.

Similarly, in this circuit, it is well settled that an appeal is not lost if a mistake is made in designating the judgment appealed from where it is clear that the "overriding intent was effectively to appeal." *U. S. v. Stromberg*, 227 F.2d 903, 904 (5th Cir. 1955). *See Comfort Trane Air Conditioning v. Trane Co.*, 592 F.2d 1373 (5th Cir. 1979).

2. The court charged the jury:

I charge you that where an event is unusual and extraordinary in its nature and there is nothing to indicate an independent efficient cause for that particular event, but the peculiar character of the event is sufficient within itself to indicate that it must have been brought about by negligence on the part of someone, and where the most reasonable and

cause plaintiff Kicklighter failed to show the presence of the requisite elements. The question before us is whether the jury should have been given the opportunity to draw the inference which the *res ipsa loquitur* doctrine permits, *i. e.*, whether there was sufficient evidence to warrant the charge.[3]

▮ While state substantive law of *res ipsa loquitur* applies in a diversity case, this court has indicated that it will apply federal law to test the sufficiency of the evidence to justify the *res ipsa loquitur* charge. *Helene Curtis v. Pruitt*, 385 F.2d 841 (5th Cir. 1967), *cert. denied*, 391 U.S. 913, 88 S.Ct. 1806, 20 L.Ed.2d 652 (1968). *Helene Curtis* teaches that a trial judge can appropriately give the *res ipsa loquitur* charge if the evidence affords a rational basis upon which the jury can conclude that the elements of the doctrine required under state substantive law are present. Thus the trial court errs in giving the charge when there is no rational basis in the evidence from which the jury could find the necessary prerequisite elements of the doctrine.

*See Cater v. Gordon Transport Inc.*, 390 F.2d 44 (5th Cir.), *cert. denied*, 392 U.S. 927, 88 S.Ct. 2285, 20 L.Ed.2d 1386 (1968). Upon careful review of the evidence in this case, we conclude that the evidence did not provide a rational basis from which the jury could have found the presence of the necessary *res ipsa loquitur* preconditions.

▮ The doctrine of *res ipsa loquitur* is typically used to supply a deficiency of proof as to negligence. *General Motors Corp. v. Muncy*, 367 F.2d 493 (5th Cir. 1966), *cert. denied*, 386 U.S. 1037, 87 S.Ct. 1476, 18 L.Ed.2d 600 (1967). It operates to permit an inference of negligence when the evidence does not directly establish how the injury occurred. The possible theories of negligence with respect to which the *res ipsa loquitur* charge might be appropriate here are (1) that the defendant was negligent in failing to warn of the dangers involved in the use of the product,[4] or (2) that the defendant was negligent in selling a product which was unreasonably dangerous for its intended use, *i. e.*, that there was a

---

probable inference that can be rationally drawn from the happening of that event is that it could not and would not have taken place had not the company charged with the manufacture of the instrumentality causing the injury alleged to have followed such an event been guilty of some particular act or omission as claimed by the Plaintiff and as constituting the actual cause of some injury, then the Jury, in your judgment and discretion, would be authorized, but not required, to draw an inference that the Defendant Nails by Jannee was negligent in causing the injury, if any, and be responsible for it in damages.

3. The trial court determines whether there has been presented that minimum level of evidence to amount to a sufficiency. Once that determination is made, it is, of course, the function of the jury to determine whether in fact the inference of negligence is to be made.

4. Georgia has adopted § 388 of *Restatement of Torts* which reads:

*Chattel Known to be Dangerous for Intended Use* One who supplies directly or through a third person a chattel for another to use, is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be in the vicinity of its probable use, for bodily harm caused by

the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier (a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied; (b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so.

*J.C. Lewis Motor Co., Inc. v. Williams*, 85 Ga. App. 538, 69 S.E.2d 816 (1952).

Under Georgia law, a manufacturer has a duty to warn of non-obvious foreseeable dangers from the normal use of his product. *Stovall & Co. v. Tate*, 124 Ga.App. 605, 184 S.E.2d 834 (1971); *Poppell v. Waters*, 126 Ga.App. 385, 190 S.E.2d 815 (1972). In *Beam v. Omark Industries, Inc.*, 143 Ga.App. 142, 237 S.E.2d 607 (1977), the Georgia Court of Appeals, citing *Everhart v. Rich's, Inc.*, 229 Ga. 798, 194 S.E.2d 425 (1972), ruled "(a) manufacturer and retailer of a product which, to their actual or constructive knowledge, involves danger to users have a duty to give warning of such danger to the purchaser 'at the time of sale and delivery.'" 143 Ga.App. at 145, 237 S.E.2d at 610.

defect in the design of the product.[5] Unless we can find that there was a rational basis from which the jury could have found the requisite elements of the doctrine to be present, it was error for the trial court to give the *res ipsa* instruction and thereby give the jury the opportunity to infer that defendant breached its duty of care, either with respect to warnings or design.

Turning to the first of the elements of the *res ipsa loquitur* doctrine, we find that there is no rational basis for a jury determination that the injury to Kicklighter was of a kind which ordinarily does not occur in the absence of someone's negligence. Here, that negligence would be the failure to warn of the dangers from the use of the product, or the selling of a product which was unreasonably dangerous for its intended use, i. e., defective in design. To determine whether an event is of the kind which does not occur unless someone has been negligent, we look to common human experience. *Berry v. American Cyanamid Co.*, 341 F.2d 14 (6th Cir. 1965); *Turtenwald v. Aetna Casualty & Surety Co.*, 55 Wis. 659, 201 N.W.2d 1, 5 (1972); *Restatement (Second) of Torts* § 328D, Comment c (1965).

We do not believe that common experience suggests that plaintiff's injury, viewed in light of her contemporaneous use of the product at issue, is of a kind which ordinarily would not occur in the absence of someone's negligence. Kicklighter's use of the product and her injury do not, standing alone, "point an accusing finger at the manufacturer [of the product]." *Helene Curtis v. Pruitt, supra*, at 854. The fact that she used the product and was subsequently injured does not provide a rational basis for inferring negligence, i. e., for inferring that use of the product involved dangers of which the manufacturer was under a duty to give warning, or that the product was unreasonably dangerous and therefore de-

fective. Even if we assume that plaintiff Kicklighter's injury was caused by the product, this fact is not sufficient, *by itself*, to infer a danger involved in the use of the product (necessary to establish a duty to warn) or to infer a risk so dangerous that a reasonable man would not sell the product (necessary to establish a design defect). This single fact does not "point an accusing finger."

The only evidence bearing on a common experience with the use of the product prior to Kicklighter's injury related to its use in the dental prosthesis industry for 40 years and a brief period of use for fingernail restoration purposes approximately 20 years ago. None of this evidence suggested that the use of the product was associated with injury such as that suffered by the plaintiff. There was, in addition, testimony that HEW had, by letter sometime in late 1975, notified the third-party defendant that it did not want methyl methacrylate sold in the cosmetic field. However, this order removing methyl methacrylate from the market for cosmetic purposes came well over a year after Kicklighter's injury and there was no evidence to show the reason for the order. Thus, at the time of the plaintiff's injury, there was no common experience in the use of the product which would suggest that her injuries from using the product would not have occurred absent negligence on the part of someone.

There was no rational basis, therefore, for the jury to conclude that Kicklighter's injuries were of a type which would not ordinarily occur in the absence of negligence on the part of someone. Accordingly, plaintiff has failed to make the necessary showing of the first of the required preconditions, and we conclude that the trial court erred in giving the *res ipsa loquitur* charge. We need not consider whether there was a rational basis for finding that the other

**5.** As in *Helene Curtis v. Pruitt, supra*, there was no evidence of any miscarriage in the production of the product and no evidence of contamination of the product. The product was as it was intended, yet the injury occurred. Thus, any defect in the product must be termed a

design defect. *Helene Curtis v. Pruitt, supra*, at 850. There this Court said "[f]or the design to be unreasonably dangerous, it must be so dangerous that a reasonable man would not sell the product if he knew the risks involved." At 850.

elements of the doctrine were present in this case.

## REVERSIBLE ERROR

■ The error in giving the *res ipsa loquitur* charge requires reversal and remand for a new trial. Although plaintiff asserted several theories of recovery, and although the *res ipsa loquitur* charge would relate to only one, the jury returned a general verdict in favor of plaintiff. We do not have the benefit of answers to interrogatories accompanying the verdict, and we, therefore, do not know on what basis the jury reached its verdict. *Vandercook & Son, Inc. v. Thorpe*, 344 F.2d 930 (5th Cir. 1965). In this situation, "we are required to assume that the jury followed only the erroneous instruction . . .." *Mixon v. Atlantic Coast Line R. R.*, 370 F.2d 852 (5th Cir. 1966) (J. Brown concurring).

## EFFECT OF REVERSAL

■ To determine the scope and effect of our decision to reverse, it is appropriate to review the status of this case on appeal. Plaintiff Kicklighter obtained a verdict and judgment in the main case against defendant Nails by Jannee, Inc. Defendant, also the third-party plaintiff, obtained a verdict and judgment in the third-party action against third-party defendant Kay-See. Defendant did not appeal. Third-party defendant did appeal. Since we have found that third-party defendant did perfect its appeal, it obviously is entitled to benefit from the relief granted on appeal. The question before us is whether defendant, who did not file a notice of appeal, shall also benefit. Because the third-party defendant's liability is derivative of defendant's liability, and because the reversal of the judgment against the third-party defendant is based solely on an error in the main case [6], *i. e.*, plaintiff's case against defendant, we hold that third-party defendant has appealed and asserted this error not only on its own behalf but also on behalf of defendant. Thus the third-party defendant's appeal operates, in this limited circumstance, as an appeal of the judgment of defendant as well as the judgment of third-party defendant.[7]

We have found no controlling authority to guide us.[8] In an analogous situation, both the Second Circuit[9] and the Fourth Circuit[10] have permitted an appeal by one

---

**6.** Third-party defendant asserted other errors, including errors relating only to the third-party action between defendant and third-party defendant. After carefully considering all of third-party defendant's contentions, we have concluded that the only error is the inappropriate *res ipsa loquitur* charge, which is an error in the main case. Accordingly, we reverse only on the basis of an error in the main case. Correspondingly, we also hold that there is no error in the third-party action judgment finding that third-party defendant is liable over to defendant for such liability as defendant might have to plaintiff. See p. 739, *supra*, and p. 745, *infra*.

**7.** Having thus determined that the judgment of defendant was also appealed, we have no problem of appellate jurisdiction over that judgment. *See Calhoun County Fla. v. Roberts*, 137 F.2d 130 (5th Cir. 1943); *Grunin v. International House of Pancakes*, 513 F.2d 114, 126 n.12 (8th Cir. 1975). *See also* 9 *J. Moore Federal Practice* ' 204.11(5) (2d Ed. 1975).

**8.** We find some support by analogy from this Court's decision in *Tejas Development Co. v. McGough Bros.*, 167 F.2d 268 (5th Cir. 1948). (Plaintiff sued and obtained a judgment against

defendant who brought a third-party action and obtained a judgment against third-party defendant. Reversal of the judgment in favor of plaintiff in the main case was held to necessarily also reverse any judgment over against the third-party defendant). *See also Baker v. Texas & Pacific Railway Co.*, 326 S.W.2d 639 (Civ. App.1959), discussed at note 12, *infra*. *Cf. Continental Casualty Co. v. United States*, 167 F.2d 107 (9th Cir. 1948) (Surety's motion for new trial held to toll time for filing appeal for defendant as well as for surety where judgment of liability was joint and several, even though defendant did not join in surety's motion for new trial). *But see Murphy v. O'Donnell*, 63 A.2d 340 (D.C. 1948); *Gibson v. Industrial Bank of Washington*, 36 A.2d 62 (D.C. 1944); *Mayo v. American Fire & Casualty Co.*, 282 N.C. 346, 192 S.E.2d 828 (1972); *Glick v. White Motor Co.*, 458 F.2d 1287 (3rd Cir. 1972).

**9.** *In re Barnett*, 124 F.2d 1005 (2d Cir. 1942).

**10.** *Maryland Casualty Co. v. City of South Norfolk*, 54 F.2d 1032 (4th Cir. 1932) (The district court held that a surety was not liable under a contractor's bond to materialmen. On appeal, filed by only some of the materialmen, the

defendant to operate for the benefit of another defendant. In the Second Circuit case, *In re Barnett*, the trustee in bankruptcy challenged an assignment by the bankrupt to her mother. The referee sustained the assignment, but the district court reversed, rejecting the mother's claim, upholding the trustee's claim, and directing the bankrupt to execute an instrument assigning the property to the trustee. The bankrupt appealed, but the mother did not. The Second Circuit reversed the district court on the ground that the assignment to the mother was valid. The court extended its relief not only to the bankrupt, who was relieved from the district court's order to execute a transfer to the trustee, but also to the mother, who had not appealed. The mother's claim to the property was sustained as against the trustee. The court stated: "Several courts have recognized that, where reversal of a judgment wipes out all basis for recovery against a non-appealing, as well as against an appealing, defendant, the reversal may operate to the benefit of both." [11]

On the other hand, the District of Columbia Circuit, in *Whitehead v. American Security and Trust Co.*, 285 F.2d 282 (1960), adopted a more rigid approach. There the plaintiff sued the defendant bank, which in turn impleaded the third-party defendant. The district court entered judgment for the defendant and the third-party defendant, whose liability was derivative. Only the plaintiff took a timely appeal. The court reversed the judgment below, holding defendant liable to plaintiff. The court rejected defendant's argument that plaintiff's appeal brought the entire case up for review. Because defendant had not appealed, the court left intact the judgment for the third-party defendant, and thus left the defendant exposed and liable to plaintiff with no reimbursement from the third-party defendant.[12] *Whitehead* and a similar, unpublished Second Circuit decision, *United States v. Bertman*, No. 28784 (2d Cir., January 31, 1964), are criticized by Professor Moore:[13] "[t]he harsh results reached in *Whitehead* and *Bertman* seem unnecessary." We express no opinion on the soundness of the cited cases. They are not controlling, and in any event are distinguishable. The plaintiff in *Whitehead* could not be said to have appealed on behalf of the defendant, as we have held in the instant case that the third-party defendant Kay-See has appealed on behalf of defendant Nails by Jannee, Inc.

The instant case more readily lends itself to broadening the scope of appeal than either *Barnett, supra* or *Maryland Casualty, supra*.[14] In the two cited cases, where an appeal by one party was expanded to benefit a non-appealing party, the two parties occupied positions in the litigation which were parallel but separate and independent, related only in that the same issue was determinative of the litigation for each. In *Barnett*, the bankrupt and her mother were

court held that the surety was liable on the bond and that the relief thus granted on appeal inured to the benefit of all materialmen, including those who had not appealed.)

11. 124 F.2d at 1009. In support of this view, the court cited *Kline v. Moyer*, 325 Pa. 357, 191 A. 43 (1937); *Gebhardt v. Village of LaGrange Park*, 354 Ill. 234, 188 N.E.2d 372 (1933); *Maryland Casualty Co. v. City of South Norfolk*, 54 F.2d 1032 (4th Cir. 1932). The court also cited, by comparison, *Merchants Discount Corp. v. Federal Street Corp.*, 300 Mass. 167, 14 N.E.2d 155 (1938); *Rowell v. Ross*, 89 Conn. 201, 93 A. 236 (1915); 5 C.J.S. Appeal & Error § 1920, p. 1423; 3 Am.Jur. 695; *Shreeder v. Davis*, 43 Wash. 129, 86 P. 198 (1906); L.R.A., N.S., 310.

12. *But Cf. Baker v. Texas & Pacific Railway Co.*, 326 S.W.2d 639 (Tex.Civ.App.1959). (Plaintiff sued a railroad which impleaded a contractor for indemnification. Judgment was entered in the trial court for the railroad on the main claim and for the contractor on the third-party claim. Plaintiff appealed but the defendant railroad did not. The U. S. Supreme Court found error in the main claim requiring a new trial. The Texas Court of Civil Appeals remanded the whole case for retrial, including the third-party claim, even though defendant had not appealed.)

13. 9 *J. Moore Federal Practice* ¶ 204.11(4), at 941 (2d Ed. 1975).

14. We express no opinion as to whether we would follow the cited cases from the Second or Fourth Circuits, because those precise facts are not before us.

both respondents to the trustee's petition challenging the assignment. In *Maryland Casualty*, the two parties were material-men, some of whom appealed and some of whom did not. However, in the instant case, the third-party defendant, Kay-See, is in a derivative position with respect to defendant, Nails by Jannee, Inc. There is an identity of interest in that third-party defendant's liability is, *i. e.*, derives from, the liability of defendant. Third-party defendant occupies the defendant's shoes.[15] Rule 14, Fed.R.Civ.P., gives third-party defendant authority to assert any defense which defendant could have asserted. Common sense and justice suggest that such defenses may be asserted by third-party defendant on behalf of itself and defendant.[16]

A contrary result, *i. e.*, a holding that the judgment against third-party defendant should be reversed but that defendant's judgment should be left intact because defendant did not appeal, would be unjust[17] for several reasons: First, it would violate common sense and common notions of justice and the appearance of justice to limit relief on appeal to the third-party defendant. The appellate process has been fully invoked and utilized. Error has been found in the judgments against both the defendant and the third-party defendant. Second, as mentioned above, we affirm defendant's judgment in the third-party action holding the third-party defendant liable over to defendant. Should we now reverse the judgment against third-party defendant, but leave intact the judgment against defendant because he did not appeal, we would run counter to our previous holding that third-party defendant is liable over to defendant. The anomalous result would be that defendant is ultimately liable, and third-party defendant is not, even though there is an error-free judgment that third-party defendant should be responsible for whatever liability defendant incurs. Third, third-party defendant would probably get off scot-free, although the error which third-party defendant has successfully asserted would ordinarily entitle it only to a new trial. This is true because it would hardly make sense to require plaintiff to prosecute a new trial, if we should hold that

---

15. Third-party defendant occupies the same adversary position, with respect to the plaintiff, as does defendant. Thus in this case the issue of the *res ipsa loquitur* charge is presented on appeal in the proper adversary context.

16. It might be argued that our decision will encourage sloppiness. Defendant was an aggrieved party and could have appealed. *See Bolack v. Underwood*, 340 F.2d 816 (10th Cir. 1965). Defendant should have appealed. However, we believe that the limited scope of our decision will not lull defendants into inattentive failures to appeal. In most cases, the third-party defendant will be asserting errors which relate only to the third-party action, and which, if successfully asserted, would relieve only third-party defendant. We reemphasize the narrowness of our holding—that third-party defendant's appeal operates also on behalf of defendant only where the judgment against third-party defendant is based on third-party defendant's liability which is derivative of defendant's liability and where the error successfully asserted by third-party defendant is an error in the main case, thus undermining the finding of defendant's liability. We express no opinion beyond this narrow holding. A defendant would be ill-advised to take no appeal, relying on a third-party defendant to successfully assert such a narrow ground for reversal. It might also be argued that our decision will undermine the adversary nature of three-party litigation, by encouraging a lack of adverseness on the part of defendant against plaintiff. However, the above discussion suggests the considerable peril which a defendant would risk by failing to take a position adverse to plaintiff. Our holding, see note 1, *supra*, that third-party defendant is free to assert errors in the main case, notwithstanding the absence of an appeal by defendant, is the significant deterrent to collusion between plaintiff and defendant. Should such collusion occur, a court has remedies available. *See Dewald v. Minster Press Co.*, 494 F.2d 795 (6th Cir. 1974) (Trial court granted third-party defendant's motion for directed verdict against the defendant in the principal action.)

17. We acknowledge that "injustice" of similar scope occurs whenever an error-ridden judgment is left unappealed. Injustice alone is not a substitute for a proper appeal. However, on the facts of this case, and with respect to the challenge to the *res ipsa loquitur* charge, we find a proper appeal in the third-party defendant's appeal. For this limited purpose, the third-party defendant, standing in the precise shoes in which defendant also stands, has properly appealed the issue on which reversal is based.

plaintiff has a final judgment against defendant because defendant took no appeal. Fourth, plaintiff would keep and satisfy its judgment against defendant, even though plaintiff's judgment contains the latent error, and plaintiff would ordinarily be entitled, not to a final judgment, but only to a new trial.

### CONCLUSION

Accordingly, we reverse both the judgment against third-party defendant, Kay-See, and the judgment against defendant, Nails by Jannee, Inc., and remand for a new trial. Further, since we found no error in that portion of the third-party action judgment against third-party defendant which fixes its liability over to the defendant for any liability which defendant might have to plaintiff, we affirm defendant's judgment in the third-party action against third-party defendant to that extent.

With respect to Kicklighter's appeal on punitive damages, we affirm the judgment notwithstanding the verdict in favor of the defendant.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.